**O**

# United States District Court
# Central District of California

MERKAMERICA INC.,

            Plaintiff,

    v.

DELL MARKETING LP et al.,

            Defendants.

Case № 2:20-cv-05408-ODW (RAOx)

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [11]**

## I.    INTRODUCTION

This matter comes before the Court on Defendant Dell Marketing LP's ("Dell") Motion to Dismiss Plaintiff MerkAmerica Inc.'s ("MerkAmerica") Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Motion").  (Mot. to Dismiss ("Mot."), ECF No. 11.)  For the reasons that follow, the Court **DENIES** Dell's Motion.[1]

## II.    BACKGROUND

In 2013, MerkAmerica entered into an "Authorized Reseller Agreement" ("Agreement") with Dell that authorized MerkAmerica to purchase and resell Dell's refurbished products.  (Notice of Removal ("NOR") Ex. A ("Compl.") ¶ 8, ECF No. 1-1.)  In mid-2016, MerkAmerica and Dell entered into an "output contract" that

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

allowed MerkAmerica to pick and choose products for resale from Dell's available inventory for a ninety-day period at fixed prices. (Compl. ¶¶ 17–18.) However, later in 2016, Dell began using a new selling model that was substantially less profitable for MerkAmerica because it required resellers to purchase inventory bundles which included some less profitable products. (*Id.* ¶¶ 17, 22.)

MerkAmerica claims it repeatedly asked Dell "for ways to cut costs and increase discounts for purchasing [Dell's] products." (*Id.* ¶ 28.) In April 2017, Dell informed MerkAmerica about its gift card program ("Program"). (*Id.* ¶ 29.) Specifically, Dell told MerkAmerica it could purchase gift cards at a volume discount—e.g., a 10% discount for more than $1,000,000 in gift cards—from a third-party vendor, RK Incentives, which could then be used to purchase Dell's refurbished products. (*Id.* ¶¶ 29–30.)

However, on August 18, 2017, before MerkAmerica could utilize the Program, Dell sent MerkAmerica an addendum to the Agreement ("Addendum") prohibiting it from using gift cards to purchase refurbished products. (*Id.* ¶ 32–33.) Soon thereafter, MerkAmerica learned that another reseller, Avallax LLC ("Avallax"), had been utilizing the Program since at least April 2016. (*Id.* ¶ 36.) Furthermore, MerkAmerica alleges that Dell had "secretly told" Avallax's owner about the Program. (*Id.* ¶ 37.) MerkAmerica claims Avallax captured a large share of Dell's consumer market because it was able to use the gift cards to pay higher prices, as compared to other resellers who did not know about the Program. (*Id.* ¶ 38.) Moreover, MerkAmerica alleges that Avallax was permitted to use Dell gift cards until October 30, 2017, two months after Dell had sent the Addendum to MerkAmerica. (*Id.* ¶ 42.) Ultimately, MerkAmerica and other resellers were driven out of business. (*Id.* ¶ 40.)

Based on the above, MerkAmerica asserts two causes of action against Dell: (1) violation of California Business & Professions Code section 17045 ("UPA"); and

(2) violation of California Business & Professions Code section 17200 ("UCL"). (Compl. ¶¶ 43–55.)

### III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### IV.    DISCUSSION

Dell moves to dismiss MerkAmerica's claims under the UPA and UCL on grounds that: (1) the claims are barred by the Agreement's choice of law provision

selecting the laws of Texas to govern the contract; (2) the claims are barred by the Agreement's limitation of liability provision; and (3) MerkAmerica fails to sufficiently state a claim.  (*See* Mot 1.)  The Court addresses each argument in turn.

### A.   Choice-of-Law

First, Dell argues that Texas law governs the Agreement under its choice-of-law provision and that no exception applies for MerkAmerica's claims under a conflict of laws analysis as between Texas and California.  (Mot. 8–13 (citing *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 464–66 (1992)).)  In opposition, MerkAmerica argues that the choice of law provision in the Agreement should be interpreted narrowly and that it does not preclude MerkAmerica's present claims.  (Opp'n to Mot. ("Opp'n") 4–17, ECF No. 13.)

"Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law."  *Fields v. Legacy Health Sys.,* 413 F.3d 943, 950 (9th Cir. 2005) (internal quotation marks omitted).  Therefore, here, the Court applies the choice of law rules of the state of California.  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  California "ordinarily examines the scope of a choice-of-law provision in a contract under the law designated in that contract." *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010); *see also BM Real Estate Servs., Inc. v. Oak Mortg. Sols. LLC*, No. CV 20-3974-KS, 2020 WL 5834288, at *1 (C.D. Cal. Sept. 3, 2020) ("If the parties state their intention in an express [contractual] choice-of-law clause, California courts ordinarily will enforce the parties' stated intention.").

As noted above, the Agreement states, "The laws of the State of Texas govern *this Agreement . . . .*"  (Decl. of Christopher Rich, Ex. A ("Agreement") ¶ 12, ECF No. 11-2 (emphasis added).)  Accordingly, the Court applies Texas law to determine which claims the Agreement covers.  Under Texas law, "[t]he wording of a contractual choice of law provision controls the types of claims it governs." *McDaniel v. Credit Sols. of Am., Inc.*, No. 3:08-CV-0928-N, 2012 WL 13102240,

at *6 (N.D. Tex. Mar. 21, 2012). "[A] broad choice of law clause may cover all actions arising from the parties' relationship," whereas "a narrow choice of law clause does not address the entirety of the parties' relationship." *Id.* (internal quotation marks omitted). Here, the Agreement's choice-of-law provision is narrow in scope, as it expressly limits its reach to the Agreement itself. *See, e.g.*, *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726–28 (5th Cir. 2003) (finding language that the "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York" narrowly limited); *McDaniel*, 2012 WL 13102240, at *5–6 (finding language "that the laws of the State of Texas shall govern any disputes arising from this Agreement" similarly narrow in scope).

Turning to the Complaint, MerkAmerica's claims fall outside the scope of the Agreement's choice-of-law provision. MerkAmerica alleges that Dell hindered competition by giving a "secret" benefit to another company that was not offered to all resellers. (*See generally* Compl.) These claims arise under the UPA and UCL, not the Agreement. *See Narayan*, 616 F.3d at 899 ("While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract [or] involve the interpretation of any contract terms . . . .").

Furthermore, Dell's reliance on *Nedlloyd* is misplaced in that it attempts to put the cart before the horse. As the claims fall outside the scope of the Agreement's choice-of-law provision, the Court need not perform any conflict of law analysis under *Nedlloyd*; there is no potential conflict of law. *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 537 (C.D. Cal. 2013) ("Under *Nedlloyd*, a trial court 'should *first* examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims . . . fall within its scope.'" (emphasis added) (quoting *Wash. Mutual Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916 (2001))).

Therefore, Dell's Motion is **DENIED** to the extent it relies on the Agreement's choice-of-law provision.

**B.     Limitation of Liability**

Second, Dell argues that MerkAmerica's claims are barred by the limitation of liability as set forth in the Agreement.  (Mot. 13; *see* Agreement ¶ 10.)  That clause states, "Dell does not accept liability beyond the remedies set forth in this agreement . . . .   Both parties expressly agree that in no event shall either party be liable to the other . . . ."  (Agreement ¶ 10.)  MerkAmerica contends, however, that this provision does not bar its claims because California Civil Code section 1668 "forbids contracts from exempting liability for fraud, willful injury, or violation of the law."  (Opp'n 17.)

Section 1668 does not "invalidate all contracts that seek to exempt a party from responsibility for *any* violation of law, including any common law or contractual violation."  *Health Net of Cal., Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224, 233 (2003).  But "'there is assuredly a point at which a limitation on the scope of remedies reaches the point of constituting an exemption' from responsibility for a violation of the law."  *BlueGem Sec., Inc. v. Trend Micro Inc.*, No. CV09-1492 ODW (FFMx), 2010 WL 11505702, at *8 (C.D. Cal. June 8, 2010) (quoting *Health Net of Cal.*, 113 Cal App. 4th at 240).  If a limitation clause exempts the defendant from all liability of wrongdoing that may be imposed by law, then it is invalid under section 1668 as the injured party must still "retain the right to seek redress."  *Farnham v. Super. Ct. (Sequoia Holdings, Inc.)*, 60 Cal. App. 4th 69, 77 (1997); *BlueGem*, 2010 WL 11505702, at *11.

Here, the Agreement's limitation of liability purportedly exempts Dell from any liability for wrongdoing, thereby robbing MerkAmerica of any viable remedy for violations of the UCL and UPA.  The limitation clause states, "liability is strictly limited to the total dollar amount of products and services purchased and paid for by you . . . during the twelve months immediately preceding the date . . . of any claim of liability."  (Agreement ¶ 10.)  For claims pursuing "lost profits" or "loss of business" (*see id.*), this remedy would perhaps be sufficient.  However, for claims outside of the

scope of the Agreement, such as violations of the UCL and UPA, the limitation of liability purports to preclude any remedy and, thus, directly violates section 1668. *See Health Net of Cal.*, 113 Cal App. 4th 235 ("[S]ection 1668 prohibits the enforcement of any contractual clause that seeks to exempt a party from liability for violations of statutory and regulatory law . . . ."); *see also BlueGem*, 2010 WL 11505702, at *11 (finding that "the limitation clause does not apply to [Plaintiff's] claim premised on Defendant's acts exceeding the scope of the parties' Agreement"). As MerkAmerica's UPA and UCL claims cannot be barred merely by virtue of the Agreement's limitation of liability clause, Dell's Motion is **DENIED** to the extent it relies on that provision.

**C.   UPA and UCL Claims**

Lastly, Dell argues that MerkAmerica fails to sufficiently state a claim under either the UPA or UCL because the alleged discount was not: (1) provided by Dell; (2) "unearned"; or (3) "secret." (*See* Mot. 14–16.)

*1.   UPA Claim*

The UPA "declares unlawful both the secret payment of rebates or unearned discounts and the secret extension of special services or privileges not extended to all purchasers on like terms and conditions." *Eddins v. Redstone*, 134 Cal. App. 4th 290, 331 (2005). Under the UPA, a plaintiff must sufficiently establish three elements: (1) that the defendant has provided a "secret allowance of an unearned discount"; (2) the secret, unearned discount caused "injury to a competitor"; and (3) that allowing the continued provision of the "allowance tends to destroy competition." *Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*, 16 Cal. App. 4th 202, 212 (1975). As the UPA is designed to "foster competition by preventing or discouraging secret allowances of unearned discounts," it must be "interpreted liberally." *Id.* at 214–15.

First, Dell contends MerkAmerica fails to establish that Dell provided a secret allowance of an unearned discount because a third-party vendor—i.e., not Dell—provided Avallax with the alleged discount. (Mot. 14–15.) However, Dell

oversimplifies both MerkAmerica's allegations and what is required under the UPA. Although MerkAmerica does not allege Dell directly provided a discount to Avallax, it does allege facts which plausibly establish that Dell *provided an allowance* of a discount to Avallax.  (Compl. ¶¶ 37–38.)  Under MerkAmerica's theory, Dell told Avallax how to purchase gift cards at a discount and permitted Avallax to use the gift cards to purchase refurbished products.  (Compl. 37–44; Opp'n 20–21.)  The alleged discount was "provided" by Dell in so much as Dell was the conduit through which Avallax learned of the gift card discount and could redeem the gift cards.  (Compl. ¶¶ 37–38.)  *See Eddins*, 134 Cal. App.4th at 333 (finding that unearned discounts are "special services or privileges not extended to all purchasers").  Thus, MerkAmerica adequately alleges the first element of its UPA claim.

Second, Dell argues that the alleged discount was not "unearned" by Avallax because Avallax purchased over $1,000,000 in gift cards to qualify for the discount. (Mot. 15.)  However, MerkAmerica alleges that Dell "secretly extended . . . special services or privileges" to Avallax by discriminating in its favor—namely, by informing Avallax it could purchase refurbished products with gift cards and that it could purchase gift cards at a discount from RK Incentives.  (Compl. ¶ 44; Opp'n 21.) Avallax may have spent over $1,000,000 on gift cards to qualify for the discount with RK Incentives, but under MerkAmerica's theory, what Avallax did not "earn" was the right to know about the gift card discount before MerkAmerica and other resellers. (*See* Compl. ¶ 44; *see also First Class Vending, Inc. v. Hershey Co.*, No. CV-15-01188-MWF (FFMx), 2015 WL 12426155, at *5 (C.D. Cal. July 28, 2015) (finding that the competitor did not "earn" the "relaxed . . . conditions and thresholds required" to qualify for the discount).  Thus, MerkAmerica adequately alleges the second element of its UPA claim.

Third, Dell argues the discount was not "secret" because Dell informed MerkAmerica of the Program in August 2017.  (Mot. 15–16.)  But again, Dell oversimplifies MerkAmerica's allegations and what is required to state a claim under

the UPA.    Although Dell eventually informed MerkAmerica of the Program, MerkAmerica was ignorant of the discount for more than a year after Avallax began using gift cards to purchase Dell products.  (Compl. ¶¶ 29–30, 37.)  *See W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, 794 F. Supp. 2d 1087, 1090 (C.D. Cal. 2011) (finding that a discount was secret when there was no evidence that the plaintiff or the public knew of its essential terms).  Moreover, MerkAmerica alleges it was injured by the secret discount, as it went out of business because it did not know about the Program.  (Compl. ¶¶ 34–36, 40, 46; *see Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1087 (C.D. Cal. 2017) (explaining that competition is destroyed when over the long run, the discount will put the plaintiff out of business).)  MerkAmerica adequately alleges the third and final element of its UPA claim.    Accordingly, MerkAmerica sufficiently alleges a claim under the UPA.

### 2.    UCL Claim

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Bus. & Prof. Code § 17200.  "The scope of the UCL is quite broad. . . .   Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition."  *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1381 (2010).  Thus, to state a claim under the UCL, the plaintiff must allege a theory under the 'unlawful,' 'unfair,' or 'fraudulent' prong, and there must be an underlying violation of law to "serve as the predicate" for a section 17200 action.  *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1997).

Dell challenges the UCL claim on the ground that MerkAmerica fails to state a claim under any of the above-mentioned prongs.[2]  (Mot. 17–18.)   MerkAmerica responds that it adequately pleads its UCL claim under the "unlawful" and "unfair" prongs.  (Opp'n 23–24.)  Thus, the Court considers only these two prongs.

---

[2] Dell also argues that MerkAmerica's UCL claim is barred because it arises solely from Dell's performance under the Agreement.  (Mot. 17.)  But this argument fails because, as explained above, the rights asserted in the claim arise under the UCL, not the Agreement.  (*See* Part IV(A), *supra*.)

First, Dell argues that MerkAmerica fails to state a claim under the "unlawful" prong because the UCL claim is based on the UPA claim.  (Mot. 17.)   Indeed, "[t]o plead an 'unlawful' practice, a plaintiff 'must allege facts sufficient to establish that a statute was violated and who, specifically, acted in violation of the statute.'"  *Mass. Cas. Ins. Co. v. Katz*, No. CV 12-4133-GHK (VBKx), 2012 WL 12886215, at *6 (C.D. Cal. Oct. 17, 2012) (quoting *Rupisan v. JP Morgan Chase Bank, NA*, No. 1:12-CV-0327 AWI GSA, 2012 WL 3764022, at *1 (E.D. Cal. Aug. 29, 2012)).   As explained above, however, MerkAmerica sufficiently alleges its UPA claim.  *See* Part IV(C)(1), *supra*.  Therefore, MerkAmerica's UCL claim is sufficiently pleaded under the "unlawful" prong.

Second, Dell argues that MerkAmerica's UCL claim also fails under the "unfairness" prong.  (Mot. 18.)  In this context, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Here, although MerkAmerica was eventually informed of the Program ex post, the alleged facts remain that Avallax knew of and capitalized on the Program while MerkAmerica and other resellers were kept in the dark, and this disparity in purchasing power drove MerkAmerica out of business.  (*See* Compl. ¶¶ 44–46.)   The Court finds these allegations adequately set forth, at minimum, a significant threat or harm to competition.  *Cel-Tech*, 20 Cal. 4th at 187.  Therefore, MerkAmerica's UCL claim is also sufficiently pleaded under the "unlawful" prong.

Thus, Dell's Motion to Dismiss is **DENIED** to the extent it seeks to dismiss MerkAmerica's UCL claim.

///

///

///

## V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Dell's Motion to Dismiss Plaintiff's Complaint (ECF No. 11).  Dell shall file its Answer to the Complaint in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

**IT IS SO ORDERED.**

November 10, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**